UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

LINDSAY N.,[1]

                Plaintiff,

    v.

COMMISSIONER, Social Security Administration,

                Defendant.

Case No. 2:20-cv-00276-MK

**OPINION AND ORDER**

**Kasubhai,** United States Magistrate Judge:

Plaintiff Lindsay N. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 5. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for immediate payment of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed her application for DIB in June 2016 alleging onset of disability on January 1, 2016. Tr. 73, 87. Her claims were denied initially and upon reconsideration. *Id.* Thereafter, Plaintiff requested a hearing before an ALJ, and a hearing was held in November 2018; Plaintiff appeared with her attorney at the time, and a vocational expert ("VE") also provided testimony. Tr. 31–72. On December 12, 2018, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 15–24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 37 years old on her alleged onset date. Tr. 74. She completed school through the twelfth grade and has worked as a veterinarian assistant. Tr. 22, 85. Plaintiff alleges disability due to fibromyalgia, sciatica, and "herniated disc." Tr. 74.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also*

*Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c). At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; obesity; migraine; depression; and anxiety. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18–19.  Before proceeding to step four, the ALJ assessed Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform a full range of light work, with the following limitations:

> [Plaintiff] is limited to tasks involving no more than frequent climbing of ramps or stairs, but no more than occasional climbing of ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to workplace hazards, including unprotected heights and moving mechanical parts. She can perform simple routine tasks with a reasoning level of 1 or 2 and unskilled work, as defined in the

>Dictionary of Occupational Titles ["DOT"]. She can tolerate occasional interaction with the public.

Tr. 19–22.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments. Tr. 22–23. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 23.

## DISCUSSION

Plaintiff assigns error to three aspects of the ALJ's decision. First, she argues that the ALJ erred by improperly rejecting her subjective symptom testimony. Second, she argues the ALJ improperly rejected the medical opinion of her treating doctor, Maggie King, M.D. Third, she argues the ALJ impermissibly rejected the lay witness testimony provided by her boyfriend, Colman P. Plaintiff contends these errors resulted in an erroneous RFC which precipitated further error at step five. The Commissioner disagrees with each assignment of error. Because the Court finds that the ALJ committed the errors asserted by Plaintiff, the non-disability decision is based on legal error and must be reversed.

## I.     Subjective Symptom Testimony

Plaintiff completed an Adult Function Report in July 2016 which outlined her alleged symptoms and limitations. Tr. 198–205. Her primary complaints were related to fibromyalgia—she endorsed widespread body pain and dizziness affecting her ability to concentrate, complete tasks, and spell and word-find. Tr. 198. Most days she attempts to clean her house for 30 minutes and occasionally do yoga to treat pain and fatigue, but mostly rest by watching television, reading, or playing on her phone. Tr. 199. She feeds and plays with her pets with assistance from

her boyfriend. *Id.* In her previous job as a veterinary assistant, she was able to work full time doing physical work with animals such as walking dogs and lifting heavy animals but feels she can no longer do so. *Id.* Her sleep is disturbed by pain. *Id.* She can perform personal hygiene-related tasks with fatigue. Tr. 200. She prepares simple meals once a week. *Id.* She performs household chores approximately 30 minutes per week and cannot perform yardwork. Tr. 201. She can drive, venture out of the house alone, and grocery shop once a week. *Id.* Although she can manage her personal finances, she feels she is more forgetful than she once was. Tr. 202.

Plaintiff endorses the ability to perform a range of hobbies and activities such as hiking, camping, swimming, boating, and reading, although she is more limited than in the past. *Id.* She spends time with her boyfriend and works once a week, but hardly ever goes places. *Id.* She finds herself being irritable due to pain, and her difficulty explaining the way she feels causes problems in her relationship with her boyfriend. Tr. 203. She suggests she can lift up to 20 pounds, stand for two hours, walk for one hour, and sit for less than an hour at a time. *Id.* As noted above, she endorses difficulties with word-finding, memory, completing tasks, concentrating, understanding, and following instructions. *Id.* She noted being fired from a job due to insubordination. *Id.* She listed the following side-effects to her medication: dizziness, nausea, diarrhea, lack of focus, and shakiness. Tr. 204.

Plaintiff's hearing testimony described similar symptoms and limitations to those described above. She testified that she drives very little, and grocery shops at a store nearby her home, where she lives with her brother. Tr. 39. She reiterated she can lift about 20 pounds, the weight of the bags of litter she buys for her cats. Tr. 41–42. She testified that she does not have trouble reading, but took special education reading courses in school. Tr. 43–44. She indicated she worked only two days in 2016, and isolated day-long stints in January of 2018. Tr. 44.

Plaintiff felt that she is prevented from working due to pain, fatigue, depression, anxiety, and sciatica. Tr. 50. She stated that Tramadol helps reduce her pain symptoms and Effexor "helps" with her depression and anxiety. Tr. 51–52. Plaintiff explained that she stopped doing yoga because it became too painful. Tr. 52. She stated she spends two-to-eight hours in bed each day and can stand for up to an hour at a time. Tr. 53–54. She reiterated her complaints of concentration and memory difficulties, and irritability, and also noted "brain fog." Tr. 55–56, 58–59, 61. Plaintiff described a typical day for her in a manner consistent with her function report. Tr. 56–57.

The ALJ determined Plaintiff's symptom complaints, in terms of their intensity, persistence, and limiting effects, were "not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 20. In support, the ALJ reasoned that Plaintiff was able to work part-time despite injuries she sustained in a 2016 motor vehicle accident, she was "well-appearing" without acute distress in 2016 and 2017 clinical visits with full strength and range of motion, she presented as "alert and fully oriented" in September 2016, and a "Cooperative Disability Investigations Unit" ("CDIU") agent observed her with normal movement and "detected no cognitive deficits" in late 2016. Tr. 20–21.

Where, as here, a claimant's medically determinable impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no evidence of malingering, the ALJ may reject symptom testimony only by offering specific, clear and convincing reasons for doing so. *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir.

2015) (citation omitted); *see* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

Plaintiff contends that the ALJ's finding was erroneous on two fronts. First, Plaintiff asserts the ALJ impermissibly rejected her symptom testimony based on the rationale that she could work one day each week despite her impairments. The Court agrees that the fact that Plaintiff could work one day a week is simply not probative of the ability to sustain gainful work "on a regular and continuing basis" as is required by the SSA's rules and regulations. SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996). The Commissioner offers no substantive argument in support of the ALJ's finding. *See* Def.'s Br. at 6. The rationale is not clear and convincing.

Plaintiff further contends the ALJ's finding that Plaintiff was "well-appearing," in no acute distress on *two* occasions, and exhibited full strength on exam and was alert and fully oriented are not clear and convincing reasons to reject her symptom testimony. The Court agrees. For one, it is not clear why a patient presenting as well-appearing and in no acute distress undermines her testimony that she experiences incapacitating fatigue and suffers from concentration problems—why would being well-appearing and in no acute distress belie fatigue or concentration complaints? The connection the ALJ attempts to draw is not particularly rational, let alone clear-and-convincing. Indeed, Plaintiff has "severe" functional limitations due to fibromyalgia and depression, which are widely accepted—and in the case of fibromyalgia, explicitly accepted by the SSA—as capable of producing fatigue and "fibro-fog" affecting concentration. *See, e.g.*, SSR 12-2p, 2012 WL 3104869, *4 (July 25, 2012).

Similarly, the absence of objective signs or symptoms does not mean that an individual does not suffer from other symptoms of fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) ("What is unusual about the disease is that those suffering from it have 'muscle strength, sensory functions, and reflexes that are normal . . . [t]he condition is diagnosed entirely on the basis of the patient's reports of pain and other symptoms.") (citations and internal quotation marks and brackets omitted). The ALJ's stated objective evidence rationales do not pass muster.

Plaintiff also assigns error to the ALJ's adoption of the observations of the CDIU investigator in rejecting her symptom testimony. *See* Tr. 21 (citing Tr. 333–34) Again, the Court agrees with Plaintiff. As described above, the symptoms of pain, fatigue, and concentration deficits are simply not subject to objective observation. Moreover, although the investigator witnessed Plaintiff lifting her 20-pound dog, she has not indicated her ability to lift is more limited than that. Tr. 41–42, 203. It is also unconvincing that a CDIU investigator's assessment that Plaintiff had "no cognitive deficits" is a valid reason to reject her symptom allegations, as an investigator is not a mental health expert. The ALJ himself determined that Plaintiff was capable of no more than simple, routine work due to her moderate limitation in concentration, undermining the investigator's observation of no limitation. Tr. 18–19.

The Commissioner argues the ALJ provided other valid reasons to reject Plaintiff's allegations, including conservative treatment, varied activities of daily living ("ADLs"), and that she left her job for reasons unrelated to her symptoms. But the ALJ failed to identify any ADLs that were inconsistent with her testimony. The ALJ made no overt finding that Plaintiff's course of treatment belied her symptom complaints. And the ALJ did not find that Plaintiff's testimony was unreliable because she left her previous job for reasons other than her impairments. The

Court may not affirm the ALJ's decision on grounds the ALJ did not invoke. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

All told, none of the reasons the ALJ invoked in rejecting Plaintiff's symptom testimony meets the rigorous clear-and-convincing legal standard. *See Garrison*, 759 F.3d at 1016 ("The clear and convincing legal standard is the most demanding required in Social Security cases.").

## II.     Medical Opinion Evidence – Dr. King

Dr. King, Plaintiff's treating physician, completed a mental impairment questionnaire in July 2017. Tr. 344–50. She listed Plaintiff's primary impairments as chronic pain, chronic fatigue, and depression, and indicated Plaintiff could not work more that one-to-two days per week or four-to-six hours per day. Tr. 344. The doctor indicated medication and counseling were "moderately effective," with medication side-effects of drowsiness and nausea. Tr. 344–45. The doctor identified several symptoms, including: anhedonia, decreased energy, feelings of guilt or worthlessness, somatization, mood disturbance, concentration difficulties, emotional withdrawal, and sleep disturbance. Tr. 346. She opined Plaintiff was "unable to meet competitive standards" in remembering workplace procedures, sustaining an ordinary routine without supervision, performing at an acceptable pace, and dealing with workplace stress, in addition to a number of other areas where she was "seriously limited." Tr. 347–48. By way of explanation, the doctor indicated Plaintiff was unable to work consistent hours, handle stress or frequent change, had poor long-term memory and coping skills, and inability to travel due to pain issues. *Id.* The doctor also identified "marked" limitations in ADLs and maintaining concentration, persistence, or pace, and that Plaintiff would be expected to miss more than four workdays per month. Tr. 349–50.

Dr. King completed a physical functional capacity assessment on October 31, 2018. There, the doctor identified fibromyalgia as the chief complaint, which rendered her "unable to work" and "constantly fatigued." Tr. 485. Plaintiff's prognosis was "unlikely to improve," and symptoms included fatigue, dizziness, nausea, headaches, diffuse myalgias, and mental fogginess. *Id.* Pain rated 5/10 was also identified. *Id.* The doctor indicated Plaintiff was not a malingerer. *Id.* She explained that Plaintiff had psychological factors which contributed to her physical condition, including depression and anxiety, and although there was "no clinical supporting evidence" of Plaintiff's symptoms, "this [wa]s consistent with fibromyalgia pain." Tr. 486. The doctor opined Plaintiff was incapable of even low-stress jobs due to anxiety and fatigue. *Id.*

Dr. King also provided function-by-function assessments of Plaintiff's limitations. She indicated Plaintiff could sit for one hour at a time and four hours in a workday, could stand for 30 minutes at a time and two hours in a workday, would need to alternate from sitting to standing or walking in a workday, and would need two-to-three unscheduled breaks of 30-45 minutes in a workday. Tr. 487. Consistent with Plaintiff's allegations, the doctor opined Plaintiff could lift up to 20 pounds, albeit rarely. *Id.* Dr. King also indicated Plaintiff was "unable to tolerate fast-paced or quickly changing [workplace] environments," and would be expected to miss more than four workdays per month. Tr. 488.

The ALJ reviewed Dr. King's opinions and provided abbreviated summaries of each. Tr. 21–22. As regards to Dr. King's mental health assessment, the ALJ simply concluded that the treating physician's opinions were inconsistent with those of the state agency psychological consultants and accorded greater weight to the latter. Tr. 22. The ALJ found Dr. King's conclusions were not supported by her treatment notes, identifying "normal" mood and affect at

clinical visits, as well as "normal" behavior, judgment, and thought content. *Id.* As regards to Dr. King's physical assessment, the ALJ did not assign any specific weight. The ALJ focused on Dr. King's lack of findings as to musculoskeletal functioning and determined the doctor's opinion that Plaintiff was unable to work (or sit, stand, or walk for a total of eight hours in a workday), was inconsistent with Plaintiff's ability to work one day a week. Tr. 21. The ALJ concluded that Dr. King's opinion "arises from an uncritical reliance on the claimant's subjective complaints[.]" *Id.*

Plaintiff contends the ALJ erred in evaluating the medical opinion evidence of record. An ALJ must consider the acceptable medical source opinions of record and assign weight to each. 20 C.F.R. § 404.1527(c). In this respect, an ALJ is responsible for resolving conflicts and ambiguities in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The opinion of a non-examining medical consultant alone does not constitute substantial evidence sufficient to reject the opinion of a treating or examining physician. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (citing *Reddick*, 157 F.3d at 725).

For the same reasons described regarding the ALJ's reason for rejecting Plaintiff's mental health complaints, the Court is unpersuaded by the Commissioner's argument that "normal" mood and affect, full orientation, and "behavior, judgment, and thought content" constitute specific and legitimate reasons to reject Dr. King's opinions. As a treating physician, Dr. King's

opinions, by default, are to be accorded the greatest weight in evaluating competing opinions. Dr. King repeatedly noted symptoms of depression, including tearfulness, restricted affect, depressed or anxious mood, and feelings of failure. Tr. 272, 306–07, 357, 359–60, 363–64, 470–75. Moreover, as set out above, the opinion of a state agency consultant alone is not sufficient to reject Dr. King's.

The Court similarly finds the ALJ's rationales for rejecting Dr. King's physical opinions lacking. Contrary to the ALJ's finding, Dr. King's treatment notes reflect musculoskeletal exams—although the notes document full range of motion, those motions were painful. Tr. 330. The medical record also substantiates Plaintiff's fibromyalgia diagnosis, which required a musculoskeletal examination that demonstrated 18/18 tender points. *Id.* Dr. King performed musculoskeletal examinations on several occasions. *See* Tr. 352 (diffuse myalgias), 356 (myalgias and chronic fibromyalgia pain), 360 (myalgias), 376 (myalgias), 384 (tenderness over lower lumbar spine), 483 (arthralgias and myalgias). Further, the ALJ's determination that Dr. King's opinion that Plaintiff was unable to work was inconsistent with her working one day per week is not well supported on this record. At the time Dr. King made the statement in 2018, Plaintiff was no longer working. Tr. 470–75, 485–89. In any event, as described *supra*, her ability to work one day per week simply is not probative of non-disability under the Act. SSR 96-8p.

For these reasons, the ALJ erred in rejecting the opinions of Plaintiff's treating physician.

### III.  Lay Witness Testimony

Plaintiff argues that the ALJ erroneously rejected observations of Plaintiff's impairments and limitations in a statement provided by her partner, Colman P. To reject testimony by a lay witness, an ALJ must provide specific, germane reasons for doing so. *Bruce v. Astrue*, 557 F.3d

1113, 1115 (9th Cir. 2009) (citation omitted). However, an ALJ's failure to do so may be harmless error where the lay testimony is essentially the same as symptom testimony provided by a claimant which was rejected for valid reasons. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (superseded by statute on other grounds).

Here, the ALJ accorded "partial weight" to Mr. P.'s written testimony because his assertion that Plaintiff spends most of the day in bed was inconsistent with Plaintiff's comment to the CDIU investigator that her typical day was spent relaxing, watching television and movies, reading, doing various craft projects, and playing with her pets. Tr. 22, 220–21. Although the ALJ's finding is germane and appears at least facially valid, the Court agrees with Plaintiff's argument that the CDIU investigator observed her for only a short period of time (less than one hour), and none of the activities listed above is necessarily something that cannot be performed while in bed, nor are such activities inconsistent with Plaintiff's own testimony. *See I.*, *supra*. The Commissioner's argument that the error is harmless under *Molina* is inapposite here, as the ALJ did not provide clear and convincing reasons to reject Plaintiff's relevant testimony.

**IV.     Remedy**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). In the Ninth Circuit, the question of whether to remand for further proceedings or for benefits is determined by the application of the

three-step "credit-as-true" doctrine. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). First, the Court must determine that an ALJ's decision is based on an error of law. *Id.* Next, the Court must determine if "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* Third, to remand for payment of benefits, the Court "must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citation omitted). Even where all three components are met, the Court retains flexibility in determining the appropriate remedy "when the record as a whole creates serious doubt as to whether the claimant, is, in fact, disabled within the meaning of the Social Security Act." *Id.*

As set forth above, the first step of the credit-as-true analysis is met by virtue of the ALJ's errors in assessing Plaintiff's symptom testimony, the medical opinions of Dr. King, and the lay witness statement. The Court does not discern any persuasive reason to remand this case for further proceedings based on the ALJ's decision or the Commissioner's arguments. The Commissioner's conclusive statement that "[h]ere, serious doubt exists, as the evidence demonstrates Plaintiff had greater functioning than alleged and the medical evidence did not support greater limitations" does not point to evidence to support its position. Def.'s Br. 17. To the contrary, the ALJ failed to provide legally sufficient reasons to reject symptom evidence provided by Plaintiff or her partner, and Dr. King's erroneously discredited medical opinion—when credited as true—constitutes evidence that establishes greater limitations than those included in the RFC. The VE testified that Plaintiff would not be able to sustain gainful employment if she missed more than one workday per month, and Dr. King's opinion is that Plaintiff would miss more than four workdays per month due to her physical and mental

limitations. *See* Tr. 69–70, 349–50, 488. Thus, the proper course is to remand this case for immediate payment of benefits. *See Brown-Hunter*, 860 F.3d at 495–96.

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this 11th day of February 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
